## THE NATCHEZ.[1]

### WALLACE and another v. THE NATCHEZ.

(*Circuit Court, E. D. Louisiana.* March 3, 1887.)

STOPPAGE IN TRANSITU—DELIVERY.
    By a substantial delivery of goods by a common carrier to the consignee thereof, consignors lose any right they may have had to stop the consigned goods *in transitu.*[2]

Admiralty Appeal. See 27 Fed. Rep. 309.
E. H. Farrar and E. B. Kruttschnitt, for libelants.
O. B. Sansum, for claimants.

PARDEE, J. At the time of the attempt of libelants to exercise the right of *stoppage in transitu*, the *transitus* had long been ended, so far as the Natchez was concerned, by the delivery at Kemp's Landing, one of the places named in the libel as the place of consignment; or, if that was not such a delivery as would relieve the Natchez from liability as a common carrier, then the *transitus* was ended when the Natchez reshipped the goods under direction of J. P. Kennedy, agent of the consignee, for another destination. There is evidence to show that Kemp's Landing and Kemp's Levee were different places, about three miles apart. The libel says the goods were consigned to Kemp's Levee or Landing, and the unsigned dray receipt, attached to the libel, specifies Kemp's Levee as the mark on the goods. There is no doubt that the goods were delivered by the Natchez at Kemp's Landing for the consignee, and that they remained there several days before they were reshipped on the

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

[2] Respecting the delivery that will defeat the consignor's right of stoppage *in transitu,* see Langstaff v. Stix, (Miss.) 1 South. Rep. 97, and note.

Natchez.   Nor is there any doubt that the goods were reshipped on the Natchez under authority from John P. Kennedy, acting on behalf of the consignee of the goods.

. As to the agency of John P. Kennedy, his own testimony leaves little doubt.   In answer to a direct interrogatory, he says: "P. J. Kennedy has one other son, and this son and myself were engaged as agents and employes of said P. J. Kennedy in and about said levee works." And to a cross-interrogatory, he says: "I was engaged in settling up the business of P. J. Kennedy, who had failed," etc.   P. J. Kennedy, while denying the authority of his son John P. to deliver property to creditors in payment of debts, admits the agency to see about supplies, to supply the people at work, and generally as a boss, representing himself in his absence.   Capt. Leathers and Dowling considered and treated him as an agent of his father.   If he was agent, and we should consider that the landing of the goods at Kemp's Landing was no delivery, then the delivery was anticipated by the reshipment under his authority, acting for his father, the consignee, and the *transitus* was at an end.   It is immaterial for this case whether the reshipment, if authorized by the consignee, was for the purpose of returning the goods to the consignors, or was for the benefit of the consignee.   I think that the evidence warrants the court in finding that John P. Kennedy was authorized and acted as the agent of his father, the consignee; that a substantial delivery was made to him; and that thereby the libelants lost any right they may have had to stop the consigned goods *in transitu*.   See Ang. Carr. §§ 345, 347; 1 Smith, Lead. Cas. 858 *et seq.*; Abb. Shipp. 525 *et seq.*

Let a decree be entered dismissing the libel, with costs.